**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
MADHULINA BANDYOPADHYAY,            :

                            :

               Plaintiff,          :       Index No.:

                            :

   -against-                   :

                            :       **COMPLAINT**

FEDERAL RESERVE BANK of NEW YORK,    :

FEDERAL RESERVE BANK of CHICAGO and  :       Jury Trial Demanded

BILL DIXON,                   :

                            :

             Defendants.     :
------------------------------------------------------------------------X

Plaintiff MADHULINA BANDYOPADHYAY by her attorneys, Nicotra Law, PLLC, complaining of Defendants FEDERAL RESERVE BANK of NEW YORK and FEDERAL RESERVE BANK of CHICAGO and BILL DIXON, alleges as follows:

### NATURE OF THE ACTION

The Plaintiff, MADHULINA BANDYOPADHYAY ("Ms. Bandyopadhyay" or "Plaintiff"), brings this action to seek redress for race, national origin and age discrimination and retaliation that she suffered while under the joint employ of the FEDERAL RESERVE BANK of CHICAGO (FRBC) and FEDERAL RESERVE BANK of NEW YORK (FRBNY) and under the supervision of BILL DIXON ("Mr. Dixon"), and FRBNY employee, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), New York State's Human Rights Law, NYS Exec. Law § 296, et seq., and New York City Human Rights Laws, New York City Administrative Code Sections 8-107.

## PARTIES

1.      Ms. Bandyopadhyay is South Asian and was born in India. She currently resides in the State of Texas, County of Bexar and was jointly employed by FRBC and FRBNY from February 2018 to January 12, 2019.

2.      Defendant Federal Reserve Bank of New York ("FRBNY"), is one of twelve Federal Reserve Banks of the United States, with its principal place of business at 33 Liberty Street, New York, New York 10045. It is a corporate instrumentality of the United States, created by Congress, with its own board of directors.

3.      Defendant Federal Reserve Bank of Chicago ("FRBC") is one of twelve Federal Reserve Banks of the United States, with its principal place of business at 230 South LaSalle Street Chicago, IL 60604. It is a corporate instrumentality of the United States, created by Congress, with its own board of directors.

4.      Defendant Bill Dixon ("Mr. Dixon") is, and was at all relevant times, employed by FRBNY as a Supervising Examiner. At all relevant times, Mr. Dixon, exercised supervisory authority over the Plaintiff and had the power to hire, fire, and/or directly affect the terms and conditions of Plaintiff's employment as well as control her daily work activities.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1357, in that this is a civil action "arising under the Constitution, laws or treaties of the United States" and pursuant to 12 U.S.C. § 632, which provides that "all suits of a civil nature at common law or in equity to which any Federal Reserve bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits." This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue in the Southern District of New York is appropriate pursuant to 28 U.S.C. §

1391(b), in that Defendant FRBNY maintains its headquarters and a substantial part of the events

giving rise to Plaintiff's claims occurred within the Southern District of New York.

7.      Plaintiff has exhausted all of the condition's precedent to the commencement of

this action. Plaintiff filed a complaint with the Equal Employment Opportunity Commission

("EEOC") alleging the unlawful discrimination, which forms the basis of the instant complaint.

The EEOC provided Plaintiff with a "Right to Sue" letter, on July 31, 2019.

## FACTS UPON WHICH ALL CAUSES OF ACTION ARISE

8.      Ms. Bandyopadhyay is a highly skilled Financial Analyst and Financial Risk

Manager. She has an MBA in Analytical Finance and Accounting and is pursuing a Ph.D. in

Business Modeling. Ms. Bandyopadhyay is certified as a Financial Risk Manager ("FRM"), a

Chartered Alternative Investment Analyst ("CAIA") and a Chartered Financial Analyst ("CFA").

9.      In 2013, Ms. Bandyopadhyay began working for the Federal Government and in

June of 2015, Ms. Bandyopadhyay began working for FRBC as a Risk Management Consultant

and Senior Quantitative Specialist.

10.      Between 2015 and 2017, while employed by FRBC, Ms. Bandyopadhyay served as

the Assigned Point of Contact ("APC") for Model Risk Management ("MRM") for several local

banks while simultaneously working on the Comprehensive Capital Analysis Review ("CCAR").

Ms. Bandyopadhyay received satisfactory evaluations from FRBC.

11.      In January 2018, Ms. Bandyopadhyay was invited to join the Large Institution

Supervision Coordination Committee ("LISCC") on the Counterparty Credit Risk ("CCR") team

under the control of FRBNY.

12.     The LISCC is a Federal Reserve System-wide committee tasked with overseeing the supervision of the largest, most systemically important financial institutions in the United States. It is overseen by the LISCC Operating Committee and is executed by staff supplied by multiple Reserve Banks and the Board.

13.     In February of 2018, Ms. Bandyopadhyay began working on the CCR.

14.     Ms. Bandyopadhyay's time was thereafter split between FRBNY and the FRBC as follows: Eighty-six percent of Ms. Bandyopadhyay's time was spent on projects under the control of, and benefiting, the FRBNY. The remaining fourteen percent of her time was assigned to FRBC projects not related to LISCC.

15.     Thus, Ms. Bandyopadhyay spent the vast majority of her working time in New York where she reported to FRBNY supervisor Bill Dixon ("Mr. Dixon") working out of the FRBNY's headquarters.

16.     Mr. Dixon supervised Ms. Bandyopadhyay's projects and managed her day to day activities. Mr. Dixon reported to Jeff Kowalak ("Mr. Kowalak") a senior supervising officer also employed by the FRBNY.

17.     In or around February of 2018, Ms. Bandyopadhyay asked her Chicago supervisor, Liming Brotcke ("Ms. Brotcke"), how her semi-annual and annual reviews would be coordinated between FRBC and FRBNY. Ms. Brotcke told Ms. Bandyopadhyay that Mr. Dixon would be responsible for coordinating and conducting the review, and she would play a smaller role based on the allocation of Ms. Bandyopadhyay's projects.

18.     In March of 2018, before Ms. Bandyopadhyay had done any work for Mr. Dixon, Ms. Bandyopadhyay asked Mr. Dixon about the performance review process. Mr. Dixon

responded, "The lowest grades are the same everywhere, it means either you leave or get fired." Ms. Bandyopadhyay was shocked by this response and perceived it as a termination threat.

19.     Thereafter, Mr. Dixon subjected Ms. Bandyopadhyay to a hostile work environment based on Ms. Bandyopadhyay's race and national origin.

20.     Between April of 2018 and December of 2018, Mr. Dixon targeted Ms. Bandyopadhyay, and subjected her to differential treatment based on her race and national origin which interfered with her ability to perform her job, including but not limited to the following:

    a.   Mr. Dixon assigned Ms. Bandyopadhyay a larger workload than his other subordinates—even though Ms. Bandyopadhyay was not assigned on a fulltime basis to FRBNY.

    b.   Mr. Dixon failed to offer Ms. Bandyopadhyay support / guidance on her projects and avoided communicating with Ms. Bandyopadhyay.

    c.   Mr. Dixon assigned Ms. Bandyopadhyay to work on a project, BMKT and failed to allocate any time in her schedule for the project.

    d.   Mr. Dixon failed to include Ms. Bandyopadhyay on email chains related to her projects.

    e.   Mr. Dixon directed Ms. Bandyopadhyay to repeatedly and unnecessarily change her evaluations, which increased Ms. Bandyopadhyay's workload and which harmed her professional integrity.

    f.   Mr. Dixon directed Ms. Bandyopadhyay to work with an external counterpart on her CCAR project. By assigning Ms. Bandyopadhyay a counterpart from another agency, Mr. Dixon greatly increased the amount of time and work

required to complete the project. Only Ms. Bandyopadhyay, and her two Indian colleagues, were assigned external counterparts.

g.   Mr. Dixon refused to meet with Ms. Bandyopadhyay for mid-year reviews but met with other employees under his charge.

h.   Mr. Dixon denied Ms. Bandyopadhyay the opportunity to participate in a national vetting of a project that she was working on but allowed her non-Indian co-workers to attend.

i.   Mr. Dixon denied Ms. Bandyopadhyay's request to use her accrued vacation time to return to India after her mother's death.

21.   Between March of 2018 and December of 2018, Mr. Dixon made numerous discriminatory and derogatory remarks about Ms. Bandyopadhyay's race and national origin, including the following:

a.   On one occasion, Ms. Bandyopadhyay asked Mr. Dixon why time had not been scheduled for her to complete the BMKT project. Ms. Bandyopadhyay asked if it was due to budgetary restraints. Mr. Dixon responded, "No. Because cheap Indian labor does not matter."

b.   On another occasion, Ms. Bandyopadhyay's asked Mr. Dixon why she, and two other Indian employees under his charge, were assigned external counterparts while the others were not. Ms. Bandyopadhyay explained that sharing data with non-FRBNY employees was time consuming. In response, Mr. Dixon shrugged and again made a comment about "cheap Indian labor."

c.   On another occasion, while Ms. Bandyopadhyay was working at an offsite examination, Mr. Dixon told Ms. Bandyopadhyay that people from "non-English speaking countries did not know how to write English reports."

d.   On another occasion, Mr. Dixon told Ms. Bandyopadhyay that "people from corrupt countries like India and Bangladesh have no business in being in regulatory roles."

22.   Between June of 2018 and November of 2018, Ms. Bandyopadhyay complained about Mr. Dixon's discriminatory treatment to FRBNY and FRBC supervisory employees:

a.   Ms. Bandyopadhyay complained on multiple occasions about Mr. Dixon to Ms. Brotcke. Ms. Bandyopadhyay reiterated Mr. Dixon's discriminatory comments and told Ms. Brotcke that Mr. Dixon was treating her unfairly, scrutinizing her work, and not providing any support. Ms. Bandyopadhyay also told Ms. Brotcke that she was concerned that Mr. Dixon was trying to set her up for failure and had refused to provide her with a mid-year review.

b.   Ms. Bandyopadhyay complained to Mr. Kowalak that Mr. Dixon was treating her unfairly, denied her a mid-year review and had made numerous disrespectful comments. Specifically, Ms. Bandyopadhyay told Mr. Kowalak the Mr. Dixon told her that non-English people could not write reports.

23.   Following the complaints, Mr. Dixon's treatment worsened.

24.   For example, weeks/days after complaining to Mr. Kowalak, Mr. Dixon excluded Ms. Bandyopadhyay from a national vetting session. As a result, Ms. Bandyopadhyay was denied the opportunity to present the results of her examination.

25.     On another, in or around October 2018, Mr. Dixon displayed his retaliatory animus toward Ms. Bandyopadhyay by belittling Ms. Bandyopadhyay in the presence of her colleague and stating, that Ms. Bandyopadhyay could take him to court but that she would lose just like Carmen Segarra.

26.     On several occasions, when Ms. Bandyopadhyay complained to Mr. Dixon about his disparate treatment, Mr. Dixon warned Ms. Bandyopadhyay to wait for her performance review, threatened her with termination and told her that she should resign.

27.     On December 3, 2018, Ms. Bandyopadhyay received her performance evaluation. Ms. Bandyopadhyay received the lowest possible rating. Mr. Dixon judged each of her projects harshly and did not include projects that Ms. Bandyopadhyay worked on where others had lauded her performance.

28.     On December 3, 2018, Ms. Bandyopadhyay also met with Jeff Donarsky ("Mr. Donarsky"), an Assistant Vice President at FRBC. Ms. Bandyopadhyay complained to Mr. Donarsky about her baseless evaluation and asked to be transferred out of Mr. Dixon's group. Mr. Donarsky refused to transfer Ms. Bandyopadhyay out of CCR and told Ms. Bandyopadhyay that she would be placed on probation.

29.     Later that day, Mr. Dixon told Ms. Bandyopadhyay, that she should immediately resign because once she was placed on probation and was fired "for cause" she would never get another federal job. He also told Ms. Bandyopadhyay, "it's hard for foreign women who are not young anymore."

30.     Ms. Bandyopadhyay complained, on or around December 10, 2019, to Yaniv Gershon ("Mr. Gershon"), a LISCC leader, about her baseless review and Mr. Dixon's derogatory comments.

31.    A few days later, Ms. Bandyopadhyay complained to the Chicago Employee Involvement Group ("EIG") and Kevin Stiroh ("Mr. Stiroh"), an FRBNY supervisor, about her baseless review and Mr. Dixon's discriminatory treatment.

32.    Around the second week of December, Ms. Bandyopadhyay received an email notification removing her from LISCC.

33.    Shortly thereafter, Ms. Bandyopadhyay was informed that 100% of her time for 2019 would be assigned to BMKT, which was operated out of NY part of LISCC. Upon receiving the notice, Ms. Bandyopadhyay alerted Mr. Gershon.

34.    Around December 27, 2018, Ms. Bandyopadhyay received an email from Mr. Dixon. Mr. Dixon assigned Ms. Bandyopadhyay a time sensitive LISCC project. At the time, Ms. Bandyopadhyay no longer had access to the LISCC data necessary for the completion of the project. Ms. Bandyopadhyay perceived this assignment as a means to justify her termination.

35.    Fearful that she would be immediately terminated for not being able to complete Mr. Dixon's assignment, and wary of Mr. Dixon's comment that she would be unable to get another federal job if she was terminated, Ms. Bandyopadhyay was forced to resign.

36.    Since that date, Ms. Bandyopadhyay has attempted to secure another federal job. However, as a result of Mr. Dixon's discriminatory actions, and FRBNY and FRBC's failure to cure such conduct, Ms. Bandyopadhyay has been unable to find comparable employment.

**FIRST CAUSE OF ACTION**
**(Race & National Origin Discrimination Under Title VII)**

37.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "36" above, with the same force and effect as if fully set forth herein.

38.     Title VII, as codified in 42 U.S.C. § 2000e-2, prohibits discrimination against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race or national origin.

39.     Defendants discriminated against the Plaintiff by subjecting her hostile work environment, denying her career opportunities, issuing a poor performance evaluation, placing her probation and constructively terminating her employment based on her race and national origin.

40.     As a result of Defendants' intentional and discrimination, Plaintiff has suffered injury to her career, emotional distress and financial harm.

41.     Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Retaliation Under Title VII)

42.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "41", as if set forth in full herein.

43.     Plaintiff complained about the hostile work environment, disparate treatment, and Mr. Dixon's derogatory comments to FRBNY and FRBC supervisors.

44.     As a result of Plaintiff's complaints, Defendants retaliated against Plaintiff by subjecting her to a hostile work environment, denying her career opportunities, issuing a poor performance evaluation, placing her probation and constructively terminating her employment.

45.     The Defendants' retaliation against Plaintiffs violates Plaintiff's federally protected rights under Title VII.

46.     As a result of Defendants' retaliatory conduct, Plaintiff has suffered injury to her career, emotional distress and financial harm.

47.     Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## (Race Discrimination Under §1981)

48.     Plaintiffs repeat and reallege each and every allegation set forth in paragraph "1" through "47", as if set forth in full herein.

49.     Plaintiff is a member of a protected class who has been subjected to discrimination on the basis of her race that has interfered with her protected rights under §1981 to enjoy all "benefits, privileges, terms and conditions of the contractual relationship."

50.     When Defendants denied Plaintiff opportunities for career advancement, issued a poor performance evaluation, placed on probation and constructively discharged the Plaintiff, Defendants denied Plaintiffs the benefits and privileges of her contracts based upon her race.

51.     Defendants' denial of the benefits and privileges to the Plaintiff was intentional, malicious and otherwise in reckless disregard of Plaintiff's rights under Section 1981.

52.     As a result of Defendants' intentional discrimination, Plaintiff has suffered injury to her career, emotional distress and financial harm.

53.     Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## (Retaliation Under §1981)

54.     Plaintiffs repeat and reallege each and every allegation set forth in paragraph "1" through "53", as if set forth in full herein.

55.     Plaintiff complained about the hostile work environment, disparate work scrutiny and treatment, and Mr. Dixon's derogatory comments to FRBNY and FRBC management.

56.     As a result of Plaintiff's complaints, Defendants subjected Plaintiff to retaliation, in that Plaintiff was subjected to a hostile work environment, denied career opportunities, issued a poor performance evaluation, placed on probation and constructively discharged.

57.     When Defendants retaliated against Plaintiff for reporting the discrimination, they violated her contractual rights to engage in a protected activity.

58.     Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under Section 1981 of the Civil Rights Act of 1866.

59.     As a result of Defendants' retaliatory conduct, Plaintiff has suffered injury to her career, emotional distress and financial harm.

60.     Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Race & National Origin Discrimination Under the**
**New York State Human Rights Law)**

61.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "60" above, with the same force and effect as if fully set forth herein.

62.     The New York State Human Rights Law ("NYSHRL"), Section §296, prohibits unlawful discriminatory employment practices on the basis of race and national origin.

63.     Defendants violated the NYSHRL by discriminating against the Plaintiff by subjecting her hostile work environment, denying her career opportunities, issuing a poor performance evaluation, placing her probation and constructively terminating her employment based on her race and national origin.

64.     As a result of Defendants' intentional discrimination, Plaintiff has suffered injury to her career, emotional distress and financial harm.

65.     Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Retaliation Under the New York State Human Rights Law)

66.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "65" above, with the same force and effect as if fully set forth herein.

67.     Plaintiff complained about the hostile work environment, disparate work treatment, and Mr. Dixon's derogatory comments to FRBNY and FRBC supervisors.

68.     As a result of Plaintiff's complaints, the Defendants subjected Plaintiff to a hostile work environment, denied her career opportunities, issued a poor performance evaluation, placed her probation and constructively terminated from her employment.

69.     Defendants' retaliation against Plaintiff violates Plaintiff's protected rights under the New York State Human Rights Law.

70.     As a result of Defendants' retaliatory conduct, Plaintiff has suffered injury to her career, emotional distress and financial harm.

71.     Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Discrimination Under the New York City Human Rights Law)

72. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "71" as if incorporated and realleged herein.

73.     Defendants discriminated against the Plaintiff by subjecting her hostile work environment, denying her career opportunities, issuing a poor performance evaluation, placing her

probation and constructively terminating her employment based on her race and national origin in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Section 8-107.

74. Defendants subjected Plaintiff to continuous hostility and treated her less favorably than other employees based on her national origin and race.

75. Defendants' conduct was intentional, malicious and otherwise in reckless disregard of Plaintiff's protected rights in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Section 8-107.

76. As a result of Defendants' intentional discrimination, Plaintiff has suffered injury to her career, emotional distress and financial harm.

77. Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

### EIGHTH CAUSE OF ACTION
### (Retaliation Under the New York City Human Rights Law)

78. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "78", above, with the same force and effect as if fully set forth herein.

79. Defendants retaliated against Plaintiff on the basis of her protected complaints of discrimination in violation of N.Y.C. Admin. Code Sections 8-107(7).

80. Between June 2018 and January 2019, Plaintiff repeatedly complained about Defendants' discriminatory conduct, derogatory remarks and disparate treatment.

81. As a result of Plaintiff's complaints, Defendants subjected Plaintiffs to retaliation, in that Plaintiff was subjected to a hostile work environment, denied career opportunities, issued a poor performance evaluation, placed on probation and constructively discharged.

82. Defendants' conduct was intentional, malicious and otherwise in reckless disregard of Plaintiff's protected rights in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Sections 8-107(1), 8-107(2) and 8-107(3).

83.     As a result of Defendants' intentional and discrimination, Plaintiff has suffered injury to her career, emotional distress and financial harm.

84.     Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## DEMAND FOR TRIAL BY JURY

85. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Court enter judgment against Defendants awarding Plaintiff:

A. On the FIRST CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

B. On the SECOND CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

C. On the THIRD CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

D.  On the FOURTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

E.  On the FIFTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages and interest in an amount to be determined at trial;

F.  On the SIXTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory and interest in an amount to be determined at trial;

G.  On the SEVENTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

H.  On the EIGHTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages; and

I.  Such other and future relief that this Honorable Court deems just and proper.

Dated:  New York, New York
        October 15, 2019

                                Nicotra Law, PLLC:

                                _____
                                Rachel Nicotra, Esq.
                                33 West 19th Street, 4th Floor
                                New York, NY 10011
                                (646) 462-3960
                                *Attorneys for Plaintiff*

16